JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Crystal L. Nelson

## DEFENDANTS
Village of Morton

**(b)** County of Residence of First Listed Plaintiff: Peoria County, Illinois
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Tazewell County, Illinois
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Hasselberg, Rock, Bell & Kuppler LLP,
Ste. 200 Associated Bank Bldg.
4600 N. Brandywine Dr., Peoria, IL 61614    309-688-9400

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment / ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. 2000e, et seq, and 29 U.S.C. 12111, et seq.
Brief description of cause:
Failure to Accommodate Disability, Discrimination on Basis of Disability, and Retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: 07/03/2017
SIGNATURE OF ATTORNEY OF RECORD: Julie L. Galassi

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

JS 44 Reverse (Rev. 09/11)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**   **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**         Example:         U.S. Civil Statute: 47 USC 553
                                                                Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| CRYSTAL L. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No:   17-cv-1311 |
| | ) | |
| VILLAGE OF MORTON, | ) | **Plaintiff demands trial by jury.** |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, CRYSTAL L. NELSON, through her attorneys, JULIE L. GALASSI, DUSTIN R. JENSEN, and HASSELBERG, ROCK, BELL & KUPPLER, LLP, states the following for her COMPLAINT against Defendant, VILLAGE OF MORTON:

**PARTIES**

1.  Plaintiff, Crystal L. Nelson ("Nelson"), resides in Peoria County, Illinois.

2.  Defendant, Village of Morton (the "Village"), is located in Tazewell County, Illinois.

**JURISDICTION AND VENUE**

3.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, the Americans with Disabilities Act, 42 U.S.C. 12111, *et seq*. (the "ADA"), and Title VII, 42 U.S.C. 2000e, *et seq* ("Title VII"). Nelson attaches her Notice of Right to Sue from the Equal Employment Opportunity Commission dated April 7, 2017 to this complaint as Exhibit 1.

4.  The Central District of Illinois, Peoria Division, is the proper venue for this matter pursuant to 28 U.S.C. 1391(b)(1) and (2), because Defendant resides in the Central District of Illinois, Peoria Division, pursuant to the residency standards set forth in 28 U.S.C. 1391(c)(2)

and a substantial part of the events giving rise to Nelson's claims occurred in the Central District of Illinois, Peoria Division.

## FACTUAL ALLEGATIONS

5. Nelson began working for the Village on March 2, 2002.

6. At all relevant times, Nelson worked for the Village as a 911 telecommunicator system administrator.

7. In or around 2006, the Village's cleaning person made numerous inappropriate sexual comments to Nelson and made inappropriate contact with Nelson.

8. To remedy the cleaning person's inappropriate conduct, Nelson moved to third shift, because the cleaning person was not present during third shift.

9. While Nelson's move to third shift relieved Nelson from the cleaning person's harassment, it caused her general stress from the nature of working third shift.

10. On June 2, 2015, Nelson requested to use her seniority to move back to second shift, because of the stress caused to her by working third shift. The move to second shift would cause Nelson to come into contact with the cleaning person during her shift. In her request to return to second shift, Nelson requested that the Village terminate the cleaning person to prevent continued harassment upon her return to second shift.

11. On June 3, 2015, the deputy chief filed a complaint against Nelson for sleeping in past her alarm three weeks earlier. The deputy chief was one of the recipients of Nelson's June 2, 2015 request.

12. The filing of the grievance for sleeping in past an alarm three weeks after the incident did not comply with the collective bargaining agreement governing Nelson's employment with the Village.

13. The Village allowed Nelson to return to second shift, but took no steps to address the concerns raised in her June 2, 2015 email regarding the sexual harassment from the cleaning person.

14. On June 15, 2015, Nelson lost vision in her right eye. This resulted in her being temporarily blinded, because she has permanent vision loss in her left eye due to an improperly diagnosed detached left retina.

15. On June 16, 2015, Nelson was diagnosed with optic neuritis in her right eye.

16. On June 23, 2015, Nelson had an episode where her vision blurred and she went to the hospital.

17. Nelson's optic neuritis required her to miss work from June 23, 2015 until August 17, 2015. Nelson notified the Village of the results of her doctors' appointments during this time period.

18. On August 12, 2015, Nelson's ophthalmologist released her to return to work on August 17, 2015 with light exposure limited to incandescent, indirect lighting.

19. On August 14, 2015, the Village's Administrator, Julie Smick ("Smick"), emailed Nelson to verify that Nelson needed the accommodation of reduced, non-fluorescent lighting and inform Nelson that floor, lamp lighting would be available when she returned to work on August 17, 2015.

20. In September 2015, Nelson's co-workers began to complain about the lighting in the dispatch room.

21. On September 23, 2015, Nelson informed the Village's Police Chief, Craig Hilliard ("Hilliard"), and Smick that she had polled dispatch centers and they use torchiere

lamps, which provide 150 watts of light directed at the ceiling. Such lighting would have fit within Nelson's restrictions.

22.     On October 1, 2015, Smick informed Nelson that the Village wanted to engage Nelson in an interactive process to explore all possibilities of accommodation.

23.     In response, Nelson offered to get Smick any information from her ophthalmologist that the Village required even though Nelson had already provided statements from her ophthalmologist to the Village twice.

24.     On October 2, 2015, Smick gave Nelson an ADA Statement to be completed by her ophthalmologist and returned to the Village by October 14, 2015.

25.     Nelson's returned the completed form to the Village on October 14, 2015. In the form, her ophthalmologist indicated that incandescent lighting would enable Nelson to complete the essential functions of her jobs and result in Nelson having better vision and no headaches. Nelson attaches a copy of the completed ADA Statement to this complaint as Exhibit 2.

26.     On October 21, 2015, the Village notified Nelson that it was sending her for evaluation by a Village selected physician, because Nelson's ophthalmologist's answers "were not specific or detailed."

27.     On October 26, 2015, the Village's physician opined that "[a]s far as lighting goes in [Nelson's] work environment, would agree that it would be more comfortable for [Nelson] to have indirect, incandescent lighting to help decrease headaches and eye strain." Nelson attaches a copy of the Village physician's report to this complaint as Exhibit 3.

28.     On October 30, 2015, the Village sent its physician a request for more specific information, including whether the Village could accommodate Nelson's optic neuritis while still using overhead fluorescent lighting. The physician responded that he could "only make

4

suggestion based on [Nelson's] description of what type of lighting works best for her." Nelson attaches a copy of the Village physician's report to this complaint as Exhibit 4.

29. On December 4, 2015, the Village informed Nelson that it did not consider her optic neuritis as a condition covered by the ADA and that "[e]ffective immediately… fluorescent lights will be required to remain on at all times." Prior to Nelson's optic neuritis, the Village allowed dispatchers to work without the overhead fluorescent lighting on if they preferred. Despite the foregoing directives, at least one dispatcher continued to keep the fluorescent lights off during his shifts after December 4, 2015.

30. On December 31, 2015, Nelson began to experience blurred vision at the end of her shift. She had to take January 1, 2016 off of work because her vision had not improved. Nelson had to have surgery to reduce her intraocular pressure and informed the Village of this on January 4, 2016.

31. On January 26, 2016, Nelson's ophthalmologist wrote the Village to inform them again that Nelson's optic neuritis required incandescent, rather than fluorescent, lighting. Nelson attaches a copy of her ophthalmologist's letter to this complaint as Exhibit 5.

32. In February and March, the Village obtained quotes to remove/alter the fluorescent lighting in the dispatch room and install LED lighting. The quotes stated a cost in between $2,930.00 and $3,390.00.

33. On February 26, 2016, Nelson wrote the Village's deputy chief regarding her optic neuritis. In the email, Nelson stated that her optic neuritis

> occurs in [her] 'good eye' and [she has] absolutely no useful vision in [her] left eye to compensate when [blurred vision] happens. So [she is] for all intents and purposes blinded enough that [she] can't see to drive let alone do [her] job… [She didn't] know if there is anything to be done on [her] end but [she would] certainty request

5

>it as the [V]illage refuses to remedy [her] work environment to lessen the strain in [her] eyes.

34. On March 1, 2016, the Village placed Nelson on involuntary leave until she could provide a statement from her doctor that her optic neuritis was under control and would not happen on duty. The Village cited Nelson's February 26, 2016 email in support of its decision.

35. The Village did not compensate Nelson while she was on leave until Nelson informed them that their failure to do so constituted a violation of the ADA.

36. Nelson has not experienced blinding, blurred vision when she was not exposed to fluorescent direct lighting. Even when Nelson did experience blinding, blurred vision, the episodes were infrequent enough that Nelson could accommodate them by using her personal and sick days.

37. On March 8, 2016, Nelson filed a charge of discrimination against the Village with the EEOC.

38. The Village could have accommodated Nelson's optic neuritis in at least the following ways:

   a. allowing her to work in indirect, incandescent lighting;
   b. allowing her to take personal and vacation days when she had an episode of blurred vision; or
   c. reassignment.

39. On September 20, 2016, the Village fired Nelson while she was on involuntary leave.

40. The foregoing actions by the Village have caused Nelson emotional distress.

# COUNT I
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### VIA DISPARATE TREATMENT
### 42 U.S.C. 12111, *et seq.*

41. Nelson realleges and incorporates allegations 1-40 into this Count.

42. Nelson had a disability as that term is defined under the ADA.

43. Nelson could perform the essential functions of her job with reasonable accommodation.

44. Nelson was placed on involuntary leave because of her disability.

45. The actions of the Village and its agents described in this complaint were motivated by animus toward Nelson's disability and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, Crystal L. Nelson, respectfully requests that this Court enter judgment in her favor and against Defendant, the Village of Morton, and grant the following relief:

A. An injunction requiring Defendant to reemploy Plaintiff in the position from which she was terminated or a comparable position, or in lieu thereof award her monies equal to lost future wages and benefits;

B. An injunction prohibiting Defendant from any further prohibited discrimination against Plaintiff;

C. Back pay that Plaintiff would have earned, together with related monetary benefits and interest thereon;

D. Compensatory damages in an amount determined at trial of this matter;

E. An award of Plaintiff's attorney fees, including legal expenses, and costs; and

F. Such further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

**COUNT II**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**VIA FAILURE TO ACCOMMODATE**
**42 U.S.C. 12111, *et seq*.**

46. Nelson realleges and incorporates allegations 1-40 into this Count.

47. Nelson is a qualified individual with a disability as that term is defined under the ADA.

48. The Village was aware of Nelson's disability.

49. The Village failed to accommodate Nelson's disability.

50. The actions of the Village and its agents described in this complaint were motivated by animus toward Nelson's disability and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, Crystal L. Nelson, respectfully requests that this Court enter judgment in her favor and against Defendant, the Village of Morton, and grant the following relief:

A. An injunction requiring Defendant to reemploy Plaintiff in the position from which she was terminated or a comparable position, or in lieu thereof award her monies equal to lost future wages and benefits;

B. An injunction prohibiting Defendant from any further prohibited discrimination against Plaintiff;

C. Back pay that Plaintiff would have earned, together with related monetary benefits and interest thereon;

D. Compensatory damages in an amount determined at trial of this matter;

E. An award of Plaintiff's attorney fees, including legal expenses, and costs; and

F. Such further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

### COUNT III
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### VIA RETALIATION
### 42 .S.C. 12111, *et seq*.

51. Nelson realleges and incorporates allegations 1-40 into this Count.

52. Nelson engaged in statutorily protected conduct by requesting a reasonable accommodation.

53. Nelson was placed on involuntary leave because of her statutorily protected conduct.

54. Nelson suffered the above-described adverse action, because she engaged in the above-described statutorily protected activity.

55. The actions of the Village and its agents described in this complaint were motivated by animus toward Nelson's statutorily protected activity and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, Crystal L. Nelson, respectfully requests that this Court enter judgment in her favor and against Defendant, the Village of Morton, and grant the following relief:

A. An injunction requiring Defendant to reemploy Plaintiff in the position from which she was terminated or a comparable position, or in lieu thereof award her monies equal to lost future wages and benefits;

B. An injunction prohibiting Defendant from any further prohibited discrimination against Plaintiff;

C. Back pay that Plaintiff would have earned, together with related monetary benefits and interest thereon;

D. Compensatory damages in an amount determined at trial of this matter;

  E. An award of Plaintiff's attorney fees, including legal expenses, and costs; and

  F. Such further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

### COUNT IV
### VIOLATION OF TITLE VII
### VIA RETALIATION
### 42 U.S.C. 2000e, *et seq.*

56. Nelson realleges and incorporates allegations 1-40 into this Count.

57. Nelson engaged in statutorily protected conduct by filing an internal complaint of sexual harassment.

58. Nelson was placed on involuntary leave because of her statutorily protected conduct.

59. Nelson suffered the above-described adverse action, because she engaged in the above-described statutorily protected activity.

60. The actions of the Village and its agents described in this complaint were motivated by animus toward Nelson's statutorily protected conduct and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, Crystal L. Nelson, respectfully requests that this Court enter judgment in her favor and against Defendant, the Village of Morton, and grant the following relief:

  A. An injunction requiring Defendant to reemploy Plaintiff in the position from which she was terminated or a comparable position, or in lieu thereof award her monies equal to lost future wages and benefits;

  B. An injunction prohibiting Defendant from any further prohibited discrimination against Plaintiff;

C. Back pay that Plaintiff would have earned, together with related monetary benefits and interest thereon;

D. Compensatory damages in an amount determined at trial of this matter;

E. An award of Plaintiff's attorney fees, including legal expenses, and costs; and

F. Such further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

        Crystal L. Nelson,
            Plaintiff,

        By:    /s/ Julie L. Galassi
                one of her attorneys

JULIE L. GALASSI
DUSTIN R. JENSEN
HASSELBERG, ROCK, BELL & KUPPLER, LLP
Associated Bank Building, Suite 200
4600 N. Brandywine Drive
Peoria, Illinois 61614
Tel:    (309) 688-9400
Fax:   (309) 688-9430
Email: jgalassi@hrbklaw.com
        djensen@hrbklaw.com
        dwarner@hrbklaw.com